UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SANDRA GRAY-ROHAN,

    plaintiff,

v.                                                       Case No. 19-cv-1032-pp

GATEWAY TECHNICAL COLLEGE,

    defendant.

## ORDER CONSTRUING PLAINTIFF'S LETTER AS MOTION TO APPOINT COUNSEL AND DENYING MOTION (DKT. NO. 68) AND SETTING SCHEDULING CONFERENCE

On December 12, 2023—while the plaintiff was represented by a lawyer—the court granted in part and denied in part the defendant's motion for summary judgment and deferred ruling on the plaintiff's §1983 retaliation claim against defendant Jayne Herring. Dkt. No. 52. The court ordered the plaintiff—who, again, had a lawyer representing her—to file a brief regarding whether she could pursue a stand-alone claim under §1983. Id. After receiving the supplemental briefing, the court dismissed the plaintiff's §1983 claim against Herring and calendared a scheduling conference for the purpose of setting a date for a trial on the plaintiff's retaliation claim against Gateway Technical College. Dkt. No. 55. The court forwarded to the plaintiff's counsel documents it had received from the plaintiff, dkt. no. 56, and—days later—the court received a letter from plaintiff's counsel asking to withdraw, dkt. no. 60. On April 3, 2024, the court conducted a telephone conference, granted

1

counsel's motion to withdraw and suspended the deadline for the plaintiff to respond to outstanding discovery requests while she searched for new counsel. Dkt. No. 61.

During a subsequent status conference on May 28, 2024, the plaintiff asserted that she had contacted about fifteen attorneys who had "conflicts of interest." Dkt. No. 63. When the court questioned her about her assertion that all fifteen attorneys had conflicts of interest, the plaintiff responded that the attorneys either had a conflict or that they hadn't responded to her. Dkt. No. 62 at 4:06-4:10. Defense counsel emphasized that the case was approaching its five-year anniversary and that many of the defendant's witnesses were aging or had retired. Dkt. No. 63 at 1. The court told the plaintiff that if she could not locate an attorney by the next hearing, she would be required to represent herself and the parties would discuss final pretrial and trial dates. Id. at 2.

On June 25, 2024, the court received from the plaintiff a letter stating that she still had not located an attorney "that does not have a conflict of interest in my case." Dkt. No. 64. She asserted that the court's summary judgment ruling was based on "false testimony from the defendants and misrepresentation" from her lawyer. Id. at 1. She attached hundreds of pages of exhibits, most of which her attorney previously had filed in opposition to the defendant's motion for summary judgment. Id.

During a hearing the next day (June 26, 2024), the court explained to the plaintiff that in responding to the defendant's summary judgment motion, her prior attorney had filed many documents—all of which the court had

considered—and that her retaliation claim had survived summary judgment. Dkt. No. 66 at 1. After the plaintiff asked for additional time to hire an out-of-state lawyer, the court agreed to give the plaintiff a final opportunity to obtain counsel. Id. at 2. The court gave the plaintiff a deadline of August 16, 2024 for an attorney to file a notice of appearance. Id. The court warned that if no attorney appeared for the plaintiff by that deadline, the court would calendar another scheduling conference with the plaintiff and defense counsel to finalize dates for the final pretrial conference and a jury trial. Id. At that point, defense counsel reminded the court that the court also would need to set new deadlines for damages and expert discovery because the court had stayed those deadlines when it allowed plaintiff's former counsel to withdraw. Id.

On August 13, 2024, the court received from the plaintiff another letter explaining that she had been unable to find an attorney in or outside of Wisconsin to represent her on the retaliation claim. Dkt. No. 68. The plaintiff said that she felt that the list of firms she had contacted far exceeded the number of firms that she should be required to contact and that she has been told that the lawyers whom she has contacted either have conflicts of interest, their existing caseloads are too heavy, they don't want to work with a case "that is already preexisting," they would not have enough time to go over all the documents in time to represent her at the trial or they didn't practice in Wisconsin. Id. at 1. She argued that the various reasons the lawyers gave for not being willing or able to represent her stemmed from the way her prior

3

counsel had handled the case and "the extended time the case has been in the courts," which she asserted was not her fault. Id. at 2.

The plaintiff asserted that a trial is "necessary to fix the statements and comments made by the courts based on what was presented in the summary judgment," arguing that she was not involved in what was presented at summary judgment or given the chance to show proof "on what was stated as being inaccurate." Id. She claimed that the court's summary judgment decision "wasn't based on everything that actually took place" during her employment with the defendant, and that the "audios from the case and the case files are not accurate in what [she] was forced to experience" during her employment. Id. She maintained that the court's dismissal of the discrimination claims is affecting her ability to obtain future employment. Id. The plaintiff said that she would like to have a voice in sharing her story. Id. at 3. She alleged that her lawyer "failed" her, that she had done all the things a good person should do in life, that she had suffered at the hands of the defendant by doing all that was asked of her and still being fired and asserted that she shouldn't have suffered because her lawyer "had alternative goals" for her case which had caused other lawyers to refuse to get involved. Id. The plaintiff stated that she wanted to file a motion for appointment of counsel, but that she did not know how to do so; she asked the "courts" to direct her in the procedure and said that she would be "receptive in following up to receive appointed trustworthy counsel." Id.

The Clerk of Court docketed the letter as a motion to appoint counsel. To the extent that the plaintiff is asking the court to appoint counsel, the court

4

will deny that motion. "Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel." Walker v. Price, 900 F.3d 933, 938 (7th Cir. 2018) (citing Pruitt v. Mote, 503 F.3d 647, 649 (7th Cir. 2007) (*en banc*)). An *indigent* litigant—someone who has no money—can ask the court to recruit a volunteer lawyer to represent that person free of charge. 28 U.S.C. § 1915(e)(1). The court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). But "deciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it [her]self?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d

5

869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files her motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent [her]self adequately." Pickett, 930 F.3d at 871.

6

District courts are required to consider "*both* the difficulty of the case *and* the pro se plaintiff's competence to litigate it himself." Pruitt, 503 F.3d at 649 (emphasis added). A *pro se* plaintiff must not only provide the court with an explanation on these points but must also offer reasons why counsel should be appointed that are not common to many other pro se litigants. Bracey v. Grondin, 712 F.3d 1012, 1017–18 (7th Cir. 2013); Pruitt, 503 F.3d at 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases).

The plaintiff has not asserted, or demonstrated, that she is indigent. Indeed, she had a lawyer who represented her over the course of almost five years. She chose to terminate their relationship, even though that attorney successfully litigated one of her claims to survive summary judgment. During the May 3, 2024 hearing on that lawyer's motion to withdraw, the lawyer represented to the court that he had waived his fees. The court has given the plaintiff ample opportunity to retain new counsel. The court cannot appoint a lawyer to represent every *indigent* client who wants one, and the plaintiff in this case is not indigent.

Even if the plaintiff was indigent, she would not be entitled to appointed counsel. Although the plaintiff asserts that she has contacted many, many lawyers—inside and outside Wisconsin—without success, she has not demonstrated that the case is so complex that it exceeds her ability to present it herself. Although the court understands that the plaintiff disagrees with the court's summary judgment ruling, that ruling stands and even if she had a

7

lawyer, the plaintiff would not be able to re-litigate that ruling before a jury at trial. All that remains for trial is a single retaliation claim; the law relating to that claim is laid out in the plaintiff's brief in opposition to summary judgment. (Dkt. No. 32 at 13-21). The plaintiff repeatedly has demonstrated her ability to articulate her retaliation claim and explain what she believes happened to her. Although she is not a lawyer and does not have legal training, she can explain to a jury why she believes the defendant retaliated against her, and she can call witnesses and ask questions (both of her own witnesses and the defendant's) about what happened.

The court **CONSTRUES** the plaintiff's letter dated August 13, 2024 as a motion to appoint counsel and **DENIES** the motion. Dkt. No. 68.

The court **ORDERS** the parties to appear for a scheduling conference on **October 21, 2024 at 1:30 PM** before Chief Judge Pamela Pepper in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202. At that hearing, the court will set deadlines for responses to discovery on the issues of damages and experts and will schedule the final pretrial conference and jury trial.

Dated in Milwaukee, Wisconsin this 1st day of October, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**